UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAUL IZZO,<br>    Plaintiff, | : CIVIL ACTION NO.<br>: 3:08-CV-00163 (JCH) |
| vs. | : |
| MOORE WALLACE NORTH INC.<br>A SUBSIDIARY OF R.R. DONNELLEY<br>& SONS, COMPANY, OPERATING AS<br>ANDREWS – CONNECTICUT, AND<br>DAVID LABROAD, INDIVIDUALLY | : AMENDED COMPLAINT WITH<br>: DEMAND FOR JURY TRIAL<br>:<br>:<br>: |
|     Defendants | : DECEMBER 24, 2008 |

## AMENDED COMPLAINT

The Plaintiff, Paul Izzo, by and through his attorney, Stephen P. Horner, alleges as follows:

I.    Introductory Statement

1.    This is an action brought by the plaintiff Paul Izzo against his employer, (Moore Wallace North, Inc.; hereinafter "Employer") for unlawfully failing to pay Paul Izzo his earned wages in violation of C.G.S. Section 31-71b, and for breaching his employment contract. Individual liability is also sought for the wage claim against the Employer's President, David LaBroad.

2.    In connection with Paul Izzo's claim, plaintiff seeks compensatory money damages for unpaid wages, as well as liquidated damages and attorneys' fees.

## II. Jurisdiction

3. Plaintiff filed a Statement of Claim of Wages with the Connecticut Department of Labor's Wage and Hour Division on or about July 19, 2007.

4. This matter was initially filed in Connecticut Superior Court on or about January 4, 2008. It was then removed by the defendant to federal court on or about January 30, 2008 on the grounds of diversity jurisdiction.

## III. Parties

5. Paul Izzo is domiciled in Connecticut and is a citizen of Connecticut.

6. Defendant Moore Wallace North, Inc. is a corporation duly organized and existing under the laws of the State of Delaware and is authorized to do business in the State of Connecticut.

7. In March of 2004, the defendant, Moore Wallace North America, Inc. was absorbed, and/or merged and/or combined with the defendant, R.R. Donnelley & Sons, Company, whereby the defendant, R.R. Donnelley & Sons, Company became the parent of Moore Wallace North America, Inc.

## IV. Statement of Facts

9. On September 27, 2004, the defendant, Moore Wallace North America, Inc., operating as Andrews – Connecticut, offered a written employment contract to the plaintiff (Exhibit 1).

10. Exhibit A, a list of companies, was attached to plaintiff's employment contract with defendant.

11. The plaintiff accepted the defendant's offer of an employment contract on September 27, 2004.

12. Plaintiff commenced his employment with the defendants on or about October 18, 2004.

13. The plaintiff was hired by the defendant to the position of account executive.

14. The employment offer specifically provided, "[y]ou will be assigned the accounts set forth on the attached Exhibit A for at least the first year of your employment (unless your employment is terminated sooner under the terms of this Letter Agreement), subject to management's discretion to remove you from one or more of those accounts for a material failure to satisfactorily service one or more of those accounts."

15. One of the accounts listed on the Exhibit A was Time Warner & Time Consumer Marketing & Time Customer Service, Tampa, FL.

16. The Time Warner account was very important to the plaintiff because it was worth a substantial amount of annual commissions (approximately $100,000) and because he had such account at his prior employer for eight years.

17. The plaintiff negotiated for six months with Andrews - Connecticut before accepting their job offer because he wanted to be sure that his account list, as noted on Exhibit A to his contract, would be given to him for handling such accounts.

18. The plaintiff had six other job offers which he rejected in favor of accepting the defendant's job offer.

19. The plaintiff would not have accepted employment with the defendant if he had not been assured that he would continue to have Time Warner as his account upon joining the defendant.

20. The defendants agreed to pay the plaintiff a monthly salary of $20,000.00 for the first nine months of his employment with the defendants, "based on gross sales of $2,000,000 during the first full year of employment".

21. The $2,000,000 sales goal was a Global Sales Goal, not a Andrews - Connecticut sales goal.

22. The employment contract also provided, "[a]fter nine months (on or about July 23, 2005) we will review your sales to-date. You will earn commissions according to the Moore Wallace commission plan in effect at that time."

23. The plaintiff has never seen any Moore Wallace commission plan that provides for split commissions.

24. The employment contract further provided, "[a]t the end of your first year with the company, we will reconcile sales & commissions earned, with a possibility of payout of further monies earned. (You will be paid in accordance with the payroll practices and commission plan of Moore Wallace, as they may change from time to time.)".

25. Additionally, the employment contract stated, "[f]rom the date of your hire to July 17, 2005, neither you nor we may terminate this agreement except for cause".

26. On October 18, 2004, plaintiff's first day of employment with defendant employer, the defendants prohibited the plaintiff from soliciting business from the Time Warner & Time Consumer Marketing & Time Customer Service, Tampa, FL accounts, the top account on the Exhibit A attachment to plaintiff's employment contract.

27. The defendant's prohibition of the plaintiff from soliciting business from the Time Warner & Time Consumer Marketing & Time Customer Service, Tampa, FL.

accounts was in breach of the plaintiff's employment agreement with the defendants since the removal was not the result of "a material failure to satisfactorily service one or more of those accounts".

28. After being barred from soliciting business from the Time Warner entities, the plaintiff requested on various occasions thereafter that he be allowed to solicit from Time Warner, or, in the alternative, replace the Time Warner accounts with another account.

29. The defendants replied to the plaintiff's requests by telling him not to worry, it will be taken care of but he was not allowed by defendant employer at any time to solicit Time Warner and he was not given any other accounts.

30. After plaintiff had worked for the defendant for nine months, Andrews – Connecticut's vice president of sales and marketing, Laurie Mongillo, informed the plaintiff on or about July of 2005 that he had twenty-four hours to choose a new draw amount going forward at the greatly reduced amount of between $60,000.00 and $80,000.00 per year. In addition, the Exhibit A accounts were to be removed from the employment agreement effective immediately.

31. On or about late June of 2005, the plaintiff protested the unfairness of the reduction and the removal of the Exhibit A accounts explaining to Mongillo that

defendants' refusal to allow him to solicit business from the Time Warner entities had placed him at a serious disadvantage in making sales that would generate an acceptable level of commissions.

32. The plaintiff also protested that his contract commissions were not supposed to be changed until twelve months had passed on his contract.

32. Commencing on or about May, 2005 and lasting until August 1, 2007, David LaBroad barred plaintiff from calling on the Marriott Creative Group which was a customer that had contacted plaintiff to handle their business.

32. On or about May, 2005, Finzer emailed Jeff Bogart that if he (Bogart) could obtain a letter from Marriott's Executive management requesting the plaintiff to be their exclusive representative then Finzer would arrange for that to happen. Although Jeff Bogart obtained such letter and gave it to Finzer, Finzer failed to make the plaintiff the exclusive representative to Marriott and failed to remove Moran Printing from calling on the Creative Group at Marriott.

32. On or about March 2006, David LaBroad barred the plaintiff from calling on both the Marriott Executive Marketing Team and the YPBR Agency, the agency of record for Marriott. This continued until September of 2007.

32. Since the plaintiff was barred from seeking business from the two Marriott accounts, David LaBroad effectively prevented him from reaching his annual sales goal of $2,000,000.

33. On or about July of 2005, Mongillo responded by stating that regardless of the unfairness involved in his not having the Time Warner accounts, the decrease in the plaintiff's monthly income and the removal of the Exhibit A accounts from his contract were not a matter open for discussion. She stated to the plaintiff "Whatever Dave LaBroad (Andrews – Connecticut president) wants, Dave LaBroad gets".

34. On or about July 2005, the plaintiff protested the income decrease and the removal of the Exhibit A accounts to both the defendants' division president, Steve Finzer, and to the defendants' Human Resources department.

35. Finzer insisted on the removal of the Exhibit A account list from the contract. (Exhibit 2)

36. The plaintiff believed that he had no choice but to agree with the mandated changes to his contract and that he had been coerced into agreeing to such changes, notwithstanding their being in breach of his employment agreement, in order to keep his job.

37. Thereafter, in retaliation against the plaintiff for his opposing his lost wages resulting from the denied access to the Time Warner accounts and his opposing his reduced salary payments, the defendants forced the plaintiff to split the commissions to which he was due on certain accounts.

38. The plaintiff was forced to split the commissions which he earned from Metropolitan Life Insurance Company AARP Business Unit and Vonage, with other account representatives who had no relationship with the business units obtained by the plaintiff.

39. The plaintiff never voluntarily agreed to split the commissions to which he was due on the Metropolitan Life Insurance Company AARP Business Unit and the Vonage business.

40. The plaintiff on numerous occasions requested that the defendants stop the splitting of his commissions to no avail.

41. Throughout his employment with the defendant, the defendant on many occasions incorrectly computed the commissions to which the plaintiff was due, in breach of his contract, requiring the plaintiff to protest the errors on those occasions.

42. On or about July 19, 2007, the plaintiff filed a complaint against the defendants with the State of Connecticut's Wage and Hour Division of the Department of

Labor complaining that the defendants have refused to pay him the compensation to which he was due.

43. The plaintiff contends that the defendant retaliated against plaintiff for his opposition to the defendant's wage practices by requiring him to split his commissions although the plaintiff never received any split commissions from any one else and although plaintiff believes that few other employees, if any, ever split their commissions with another employee.

44. The plaintiff informed the defendants on numerous occasions that they had no lawful right to split his commissions with other account representatives.

45. The plaintiff repeatedly demanded that the defendants reimburse him for the commission splits that they had unilaterally diverted from him without his permission or agreement.

V. <u>Legal</u> <u>Claims</u>

First Claim: *(Failure to Pay Plaintiff's Wages in Violation of Conn. Gen. Stat. §§ 31-71 et. seq., Pursuant to Conn. Gen. Stat. § 31-72 against Defendant Moore Wallace)*

46. Paragraphs 1 through 45 above are hereby incorporated by reference and made paragraphs 1 through 45 of the First Claim.

47. By refusing to pay the plaintiff the full amount of the commissions to which he was entitled as referenced above, the defendants have violated the provisions of Connecticut General Statutes § 31-71b.

48. The defendants' refusal to pay the defendant the wages it owed him was purposeful and with malice, meant to cause the plaintiff serious injury.

49. The defendants acted with bad faith, arbitrariness or unreasonableness when it refused to pay the plaintiff the full commissions to which he was entitled.

50. Pursuant to the provisions of Connecticut General Statutes § 31-70 et seq., the plaintiff is entitled to double damages and attorney fees and costs.

Second Claim: *(Failure to Pay Plaintiff's Wages in Violation of Conn. Gen. Stat. §§ 31-71 et. seq., Pursuant to Conn. Gen. Stat. § 31-72 against Defendant David LaBroad, Individually)*

51. Paragraphs 1 through 50 of the First Claim are hereby incorporated by reference and made paragraphs 1 through 50 of the Second Claim.

52. Defendant LaBroad is the President of Andrews - Connecticut.

53. LaBroad was in charge of and held ultimate responsibility for decisions regarding wages for the plaintiff.

54. LaBroad was the individual with ultimate decision making authority regarding Izzo's wages.

55. LaBroad made a conscious decision to not pay Izzo's wages.

56. LaBroad's failure to pay Izzo's wages, as described above, was in bad faith, arbitrary and unreasonable.

57. LaBroad was Izzo's employer as defined in Conn.Gen.Stat. § 31-71.

58. LaBroad's failure to pay Izzo's wages is a violation of Conn.Gen.Stat. §§ 31-71 et seq., and § 31-72.

59. Pursuant to Conn. Gen. Stat. § 31-72, Izzo is entitled to twice the amount of wages owed to him, plus attorneys' fees.

## Third Claim: *(Breach of Employment Agreement)*

60. Paragraphs 1 through 59 of the Second Claim are hereby incorporated by reference and made paragraphs 1 through 59 of the Third Claim.

61. The defendant made a promise in the form of a writing which constituted an offer to the plaintiff.

62. The plaintiff accepted such offer and it became plaintiff's employment contract, attached hereto as Exhibit A.

63. The plaintiff was aware of the contractual commitments and relied on them in the course of his employment.

64. The defendant acted contrary to its contract with the plaintiff and breached its contractual commitments as referenced above.

65. Defendant denied Plaintiff his express contractual rights to receive his earned commissions and to have the Time Warner accounts assigned to him.

66. Plaintiff suffered significant financial hardship as a result Defendant's breach of Plaintiff's employment contract.

67. The plaintiff suffered reasonably foreseeable damages as a proximate result of defendant's actions.

68. Accordingly, the plaintiff is entitled to be put in the same economic position as if the contract had not been breached.

69. The defendants were contractually obligated under the terms of the plaintiff's employment agreement, as amended on October 21, 2005, to pay the plaintiff "in accordance with the payroll practices and commission plan of Moore Wallace", as they may change from time to time.

70. The splitting of the commissions to which the plaintiff was due on the Metropolitan Life Insurance Company AARP Business Unit and the Vonage business, for which he was the procuring cause, was not in accordance with the defendant's payroll practices and/or commission plan.

71. Plaintiff lost approximately three million dollars in sales due to his not being allowed to handle the Time Warner account.

72. Plaintiff had handled the Time Warner account for the prior eight years before being hired by the defendants and such account had comprised half of his income.

73. Contrary to defendant's assertion in its response to the plaintiff's Wage and Hour Complaint that plaintiff had an affair with his contact at MetLife (Sandie Currie), plaintiff asserts that MetLife's internal investigation of such allegation found no wrong doing and included a written statement from Sandie Currie that specifically and completely denied any such allegation.

74. The defendants breached their agreement with the plaintiff when it failed to pay him the compensation to which the defendant was contractually obligated to pay the plaintiff.

75. As a result of the defendants' breach of the employment agreement as amended, the plaintiff has suffered monetary damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter:

(a)  A judgment declaring that defendant has violated the law and has breached its employment agreement with the defendant.

(b)  A money judgment representing compensatory damages, including lost wages, and all other sums of money;

(c)  A money judgment representing liquidated damages for Defendant's willful violations of the Wage and Hour laws of the State of Connecticut;

(d)  A money judgment representing interest on this Court's award from the date of plaintiff's wage losses until the date of payment, on a compound basis;

(e)  A money judgment to recoup any tax loss suffered by plaintiff as a result of receiving a lump sum award;

(g)  That the Court retain jurisdiction over this action until Defendant has fully complied with the Orders of this Court and that the Court require Defendant to file such reports as may be necessary to supervise such compliance;

(h)  Damages for Defendant's breach of contract;

(j)  The costs of suit, including an award of reasonable attorneys' fees pursuant to; and

(k)  Such other and further relief as may be just and proper.

VII.　<u>Jury</u> <u>Demand</u>.　　Plaintiff demands trial by jury of all issues in this action.

Dated at Darien, Connecticut this 24th of December, 2008.

        THE PLAINTIFF
        PAUL IZZO


BY:　　_____/S/_____
        STEPHEN P. HORNER (ct02460)
        Rucci, Burnham, Carta, Carello & Reilly, LLP
        30 Old Kings Highway South, Post Office Box 1107
        Darien, Connecticut 06820
        (203) 899-3330 (Phone) – (203) 655-3202 (Facsimile)
        shorner@rucciburnham.com

CERTIFICATION OF SERVICE

I hereby certify that on this 24th of December, 2008, a copy of the foregoing Amended Complaint was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

        THE PLAINTIFF
        PAUL IZZO

BY:        /S/
        STEPHEN P. HORNER (ct02460)
        Rucci, Burnham, Carta, Carello & Reilly, LLP
        30 Old Kings Highway South, Post Office Box 1107
        Darien, Connecticut 06820
        (203) 899-3330 (Phone) – (203) 655-3202 (Facsimile)
        shorner@rucciburnham.com