**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| PAUL IZZO, | : | |
| Plaintiff, | : | |
| v. | : | No. 3:08-CV-00163 (DJS) |
| MOORE WALLACE NORTH AMERICA, INC., and DAVID LABROAD, | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION AND ORDER

The plaintiff, Paul Izzo, brings this action against the defendants, Moore Wallace North America, Inc. ("Moore Wallace"), and David LaBroad, alleging common law breach of contract and violation of Connecticut wage laws. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332. The defendants now move for summary judgment on all claims. For the following reasons, their motion (dkt. # 54) is DENIED.

### I. BACKGROUND[1]

Izzo is a sales professional residing in Newtown, Connecticut. Moore Wallace is a Delaware corporation having its principal place of business in Illinois which operates a commercial printing facility known as "Andrews Connecticut" in

---
[1] Unless otherwise noted, the following is drawn from the parties' submissions relating to the motion at bar.

1

Manchester, Connecticut. LaBroad is the President of Andrews Connecticut.

On September 28, 2004, Izzo entered into a written employment Agreement with Moore Wallace (the "2004 Agreement") by which he became an Account Executive (i.e., a sales representative) at Andrews Connecticut. With respect to his compensation, the 2004 Agreement provides as follows:

> You will be paid a monthly salary of $20,000 for the first nine months, based on gross sales of $2 million during the first full year of employment.
>
> After nine months (on or about July 23, 2005) we will review your sales to-date. At that point we will determine an equitable draw against commission.[2] You will earn commissions according to the Moore Wallace commission plan in effect at that time.
>
> At the end of your first year with the company, we will reconcile sales & commissions earned, with a possibility of payout of further monies earned. (You will be paid in accordance with the payroll practices and commission plan of Moore Wallace, as they may change from time to time.)

(Dkt. # 55-3, ¶ 3.) With respect to timing, the 2004 Agreement provides as follows:

> Your employment will commence on October 18, 2004 . . . . .
>
> From the date of your hire to July 17, 2005, neither you nor we may terminate this agreement except for cause. After July 17, 2005, it is expressly agreed and understood that your employment with Moore Wallace is to be at will . . . .

---

[2] "Draw against commission" refers to the advance payment of a salesperson's anticipated commission-based earnings. The amount "drawn" by the salesperson is determined on the basis of prior sales performance and is subsequently adjusted to account for commissions actually earned.

(Dkt. # 55-3, ¶¶ 1, 5.)  Finally, the 2004 Agreement contains the following:

> You will be assigned the accounts set forth on the attached Exhibit A for at least the first year of your employment (unless your employment is terminated sooner under the terms of this Letter Agreement), subject to management's discretion to remove you from one or more of those accounts for a material failure to satisfactorily service one or more of those accounts.

(Dkt. # 55-3, ¶ 1.)  Exhibit A to the 2004 Agreement — labeled "Paul Izzo Account List" — lists several organizations, including "Time Warner & Time Consumer Marketing & Time Customer Service, Tampa, FL."  (Dkt. # 55-3, p. 5.)

As agreed, Izzo first reported to work on October 18, 2004. That same day, he was informed that he would not be permitted to solicit any business from Time Warner, Time Consumer Marketing, or Time Customer Service (collectively, "Time Warner").  He protested on several occasions, but was never subsequently permitted to seek business from Time Warner.

Over a year later, on October 23, 2005, Izzo and LaBroad signed a document captioned "Amendment to September 27, 2004 Letter Agreement between Paul Izzo and Moore Wallace" (the "2005 Amendment").  (Dkt. # 55-5, p. 2.)  The 2005 Amendment: (1) extended the period during which Izzo would be paid a monthly salary of $20,000 untied to his sales performance from July 23,

3

2005, to December 31, 2005; and (2) deleted Exhibit A to the 2004 Agreement. (Dkt. # 55-5, p. 2.)

From 2005 to 2008, Izzo successfully solicited business from Metropolitan Life Insurance Company ("MetLife") and Vonage. Moore Wallace, however, "split" Izzo's commissions for these sales and paid a portion to two other Moore Wallace sales representatives associated with the same clients. Izzo protested on several occasions and filed a complaint with the Connecticut Department of Labor. He then brought this action.

## II. ANALYSIS

### A. Jurisdiction over LaBroad

As a preliminary matter, Izzo appears to invoke diversity pursuant to 28 U.S.C. § 1332 as the basis for subject-matter jurisdiction over all of his claims. Izzo is a Connecticut citizen, and thus properly invokes diversity jurisdiction over Moore Wallace, a Delaware corporation headquartered in Illinois. Izzo's pleadings, however, are silent as to LaBroad's citizenship, specifying only his role as President of Moore Wallace's Connecticut-based printing facility.

Diversity jurisdiction can exist "only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State." Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381 (1998). Thus, "'[w]hen a plaintiff sues more than one defendant

4

in a diversity action, the plaintiff must meet the requirements of the diversity statute for each defendant or face dismissal.'" Bounds v. Pine Belt Mental Health Care Resources, 593 F.3d 209, 215 (2d Cir. 2010) (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 (1989)) (emphasis intact). The party invoking diversity jurisdiction "bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." Herrick Co., Inc. v. SCS Communications, Inc., 251 F.3d 315, 322-23, (2d Cir. 2001). Here, Izzo's pleadings fall short of meeting this burden with respect to LaBroad.

Rule 12(h)(3) of the Federal Rules of Civil Procedure generally mandates dismissal where subject-matter jurisdiction is determined to be lacking. Fed. R. Civ. P. 12(h)(3). See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) ("If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action sua sponte."). Rule 21, however, "allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction . . . provided the nondiverse party is not 'indispensable' under Rule 19(b)." CP Solutions PTE, Ltd. v. General Electric Co., 553 F.3d 156, 159 (2d Cir. 2009) (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832

(1989)). See Fed. R. Civ. P. 21, 19(b). Here, the parties' submissions do not address the questions raised by these rules. Accordingly, the Court invites further briefing addressing the basis, if any, for subject-matter jurisdiction over Izzo's claim against LaBroad.

### B. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, on a motion for summary judgment, the Court must "determine whether, as to any material issue, a genuine factual dispute exists." Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010). Where the material facts are not genuinely disputed, the Court must also determine whether they entitle the movant to judgment as a matter of law under the controlling substantive standards. Celotex Corp. v. Catrett, 477 U.S. 317,

6

322-23 (1986); Kaytor, 609 F.3d at 545.

In making these determinations, "the court should review all of the evidence in the record." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000); Kaytor, 609 F.3d at 545. In so doing, "the court must draw all reasonable inferences in favor of the nonmoving party, and . . . may not make credibility determinations[,] weigh the evidence," or otherwise "resolve disputed questions of fact." Reeves, 530 U.S. at 150; Kaytor, 609 F.3d at 545.

### 1. Breach of Contract

Izzo alleges that Moore Wallace breached the 2004 Agreement in two ways: First, by barring him from soliciting business from Time Warner, and second, by failing to pay him the full commissions associated with his sales to MetLife and Vonage. In support, he argues that the 2004 Agreement expressly assigned him the Time Warner account for at least the first year of his employment, subject only to management's discretion to remove him for a material failure to satisfactorily service that account, and that no such failure occurred. He further argues that by "splitting" the commissions associated with his sales to MetLife and Vonage, Moore Wallace failed to pay him "according to the Moore Wallace commission plan" as was required by the 2004 Agreement.

Moore Wallace now argues that it is entitled to summary judgment with respect to the alleged breach of contract because Izzo "cannot prove that he suffered any damages as a result of the Time Warner issue," and because Izzo "suffered no damages" as a result of the MetLife and Vonage commission splits. (Dkt. # 55, pp. 11-15, 18-19.) These arguments, however, rest on the mistaken premise that actual damages are an "essential element[] for a cause of action based on breach of contract." (Dkt. # 55, pp. 11-12.) To the contrary, actual damages are not essential to establishing liability for breach of contract under Massachusetts law.[3] See Davidson Pipe Supply Co., Inc. v. Johnson, 14 Mass. App. Ct. 518, 520, 440 N.E.2d 1194, 1195 (1982) ("If the plaintiff cannot show that it is entitled to any damages, the defendant would still be liable for nominal damages if the plaintiff can prove that the defendant committed a breach of an employment agreement. Once a breach is established, the plaintiff is entitled 'to at least nominal damages in an action at law . . . regardless of his ability to prove substantial damages.'" (quoting Rombola v. Cosindas, 351 Mass. 382, 384,

---

[3] The 2004 Agreement expressly provides that it is to be construed in accordance with Massachusetts law. (Dkt. # 55-3, ¶ 10.) A district court sitting in diversity applies the choice of law rules of the state in which it is located. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); Bakalar v. Vavra, 619 F.3d 136, 139 (2d Cir. 2010). Connecticut law "give[s] effect to an express choice of law by the parties to a contract provided that it was made in good faith." Elgar v. Elgar, 238 Conn. 839, 848, 679 A.2d 937, 942 (1996). See Reichhold Chemicals, Inc., v. Hartford Accident & Indemnity Co., 252 Conn. 774, 788, 750 A.2d 1051, 1059 (2000) (Connecticut law favors the enforcement of contractual choice of law provisions). Massachusetts law therefore governs.

220 N.E.2d 919 (1966) (citation omitted)); Damiano v. National Grange Mut. Liability Co., 316 Mass. 626, 629, 56 N.E.2d 18, 20 (1944) ("When a contract has been broken by a defendant, the plaintiff 'is entitled to a verdict for nominal damages for the breach, if nothing more. For every breach of a promise made on good consideration, the law awards some damage.'" (quoting Hagan v. Riley, 79 Mass. (13 Gray) 515, 516 (1859))).[4] Moore Wallace can be held liable for breach of contract without regard to whether Izzo proves actual damages, and thus is not entitled to summary judgment on the ground that Izzo "suffered no damages." Accordingly, Moore Wallace's motion for summary judgment must be denied to the same extent.

Moore Wallace further argues that it is entitled to summary judgment with respect to the alleged breach of contract because "commission splits are a regular practice at Moore Wallace," and because Izzo "voluntarily agreed" to the MetLife and Vonage commission splits. (Dkt. # 55, pp. 15-18.) Both points appear intended to establish that Izzo was indeed paid in accordance with the Moore Wallace commission plan to which the 2004 Agreement refers. Both points, however, explicitly invite the

---

[4] The same principle applies under Connecticut law. See News America Marketing In-Store, Inc. v. Marquis, 86 Conn. App. 527, 535, 862 A.2d 837, 842-43 (2004) ("If a party has suffered no demonstrable harm . . . that party may be entitled . . . to nominal damages for breach of contract."), aff'd, 276 Conn. 310, 885 A.2d 758 (2005). See, e.g., Lydall, Inc. v. Ruschmeyer, 282 Conn. 209, 919 A.2d 421 (2007) (plaintiff "could point to no pecuniary damages" but was nonetheless deemed "entitled to nominal damages of $1 under its breach of contract claim.").

9

Court to weigh competing evidence in order to resolve genuinely disputed questions of material fact, precluding present disposition as a matter of law. Accordingly, summary judgment must be denied with respect to Izzo's breach of contract claim.

### 2. Connecticut Wage Laws

Izzo brings separate Connecticut wage law claims against Moore Wallace and LaBroad. Specifically, he alleges that by failing to pay him the full commissions associated with his sales to MetLife and Vonage, Moore Wallace violated the provisions of Connecticut General Statutes § 31-71b (dkt. # 42, ¶ 47), and LaBroad, in his individual capacity, violated "§§ 31-71 et seq." (dkt. # 42, ¶ 58). Connecticut General Statutes § 31-71b(a), in relevant part, provides that "[e]ach employer . . . shall pay weekly all moneys due each employee on a regular pay day . . . ." Conn. Gen. Stat. § 31-71b(a). Section 31-71e further provides:

> No employer may withhold or divert any portion of an employee's wages unless (1) the employer is required or empowered to do so by state or federal law, or (2) the employer has written authorization from the employee for deductions on a form approved by the [Labor] commissioner, or (3) the deductions are authorized by the employee, in writing, for medical, surgical or hospital care or service, without financial benefit to the employer and recorded in the employer's wage record book, or (4) the deductions are for contributions attributable to automatic enrollment . . . in a retirement plan . . . .

Conn. Gen. Stat. § 31-71e.[5] An express private right of action exists to enforce these provisions. See Conn. Gen. Stat. § 31-72 ("When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . ."). Thus, an employee may proceed against an employer that withholds or diverts commission-based compensation due, but only if the employer's withholding or diversion also violates an existing agreement with respect to the employee's compensation. See Mytych v. May Dept. Stores Co., 260 Conn. 152, 162, 793 A.2d 1068, 1073 (2002) ("[T]he wage statutes, as a whole, do not provide substantive rights regarding *how* a wage is earned ; rather, they provide remedial protections for those cases in which the employer-employee wage agreement is violated." (emphasis intact)); Weems v. Citigroup, Inc., 289 Conn. 769, 784 n.16, 961 A.2d 349, 358 n.16 (2008).[6]

---

[5] "Wages" are defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen. Stat. § 31-71a(3).

[6] To the extent that a basis for jurisdiction over LaBroad exists, he is personally subject to § 31-72 liability. See Butler v. Hartford Technical Institute, Inc., 243 Conn. 454, 463-64, 704 A.2d 222, 227 (1997) ("an individual personally can be liable as an employer pursuant to § 31-72, notwithstanding the fact that a corporation is also an employer of the claimant, if the individual is the ultimate responsible authority to set the hours of employment and to pay wages and is the specific cause of the wage violation

Here, Moore Wallace and LaBroad argue that they are entitled to summary judgment because all wages actually due to Izzo pursuant to the 2004 Agreement, as modified by the 2005 Amendment thereto, "were paid." (Dkt. # 55, pp. 24-25.) As explained above, however, genuine disputes of material fact preclude disposition as to whether Izzo was paid in accordance with the Moore Wallace commission plan to which the 2004 Agreement refers. The same factual disputes thus also necessarily preclude disposition as a matter of law with respect to Izzo's wage claims. Accordingly, summary judgment must also be denied as to the same.

### III. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment **(dkt.# 54)** is **DENIED** in its entirety. The Court invites further briefing, **to be filed no later than June 30, 2011**, limited to the basis, if any, for its subject-matter jurisdiction over Izzo's claim against defendant David LaBroad.

SO ORDERED this 17th day of May, 2011.

_____/s/DJS_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**